May it please the court, Douglas F. Cushney appearing for appellant, Luis Caipat Pelisamen. After the judgment entered in this case in the district court with respect to the charges filed, there was a decision from the U.S. Supreme Court regarding the issue of honest services fraud. The two charges which the defendant had to respond to, one of which was fraud, one of which was honest services fraud. Since the decision by the Supreme Court in the Skilling case, the issue of honest services fraud as we know has been radically modified to include only kickback and bribery allegations. Since the decision was issued in Skilling, we submit that the decision of the jury, the verdict of the jury on those counts of fraud and honest services fraud must fall. Yeah, but what are we supposed to do with the fact that the jury, you know, in effect entered a double verdict on those counts, right? I think, Your Honor, that that's probably the essential issue that is before the court with respect to this particular point of appeal. And that is the jury verdict which sets forth honest service. Do you find the individual, Mr. Pelisamen, guilty of honest services fraud and or fraud? I submit that based upon the context of that jury verdict, one cannot know what the jury was deciding. Well, the plain reason is they decided both. He was guilty of honest services fraud, and I'll call it regular fraud, right? They exited both alternatives. That's right. Don't we have to assume that they found both? No, I don't think so, Your Honor. This is not a mathematical situation where one plus one equals two. You take one away, we all know that one's left. There's no more two. There's just one. Is there any case law that supports that? Is there any case law on this at all? With respect to this particular issue? With respect to this kind of double verdict? Oh, yes, certainly. We've cited that. You have to, if there's a double verdict, you cannot ascertain which way the jury was jumping on this thing. Then you have to reverse. No, but those are cases that, you know, where the verdict form doesn't specify, although there are two alternate grounds, and you can't tell. Right. But I'm talking about a case that has this kind of form that, you know, two places to check off. I have not found one. But there's no – I thought you had some argument that the fraud claim by itself wasn't really different or something. I mean, ordinarily, if you have two different theories and they're both found, then it doesn't matter if one of them is valid. If the jury verdict form had conformed in any way with the instruction, number 15, with respect to this issue. In other words, if the jury verdict form had said, do you find the defendant guilty of fraud, period. Okay. Next paragraph. Do you find the defendant guilty of deprivation of honest services, period. Stop. Seems that's exactly what it did. That's not what this was. The jury was asked to determine, both in the conjunctive and disjunctive, the issue of guilt. No. Yes. It was and slash or. And or means you can find either in the conjunctive or in the alternate. So what did they do? Is that the usual meaning of and or? The point is we're trying to define what the jury was thinking of at the time. And we don't know what they were thinking of at the time because they did not know, as we know now, that honest services fraud is unconstitutional. They can't find that. But they did. They found it and. Two of them together. You can't find it. It means it's not a crime. You can still find it. But they don't know that. They don't know that. They don't have to know it to find out whether it's true or not. I'm sorry, Your Honor. They don't have to know it, whether it's constitutional or unconstitutional. They just have to know whether the facts amount to honest services fraud, which is not a crime. But they found it to be a crime. I assume. Maybe. Maybe not. Let me see if I can help you. As I understand your argument, it hinges entirely on the and or. And slash or means in ordinary usage means and. Or it means or. And it's possible then to read this jury verdict having found, okay, I'll just read it. If you voted guilty, indicate what theory or theories of liability you relied on as described in Jury Instruction 15, Schema of Fraud or Fraud of the Heirs of the Estate, or Schema of Fraud or Propriety of the Heirs of the Estate of the Honest Services. That is to say, because it's an and or, one way to read this is that they did this in the alternative. That's your argument. One way. But we don't know. We don't know that. We're faithful to you. He's helping you. This is a helpful question. I understand that. I understand that. But we could look at it and or. Maybe one, maybe the other. Yeah. So let's assume that reading your position as helpfully as we can that the jury meant or. Okay. Then what? Does that mean we automatically toss that count out? I think you have to because we don't know what the jury was thinking at that time. What if the evidence is overwhelming in support of a jury verdict in which Fraud on the Heirs of the Estate could be found? Well, there is some case authority that if the evidence is overwhelming, that an appellate court can do so. But the evidence in this case is not overwhelming. It seems to me, because I don't know whether the right word is overwhelming, it seems to me utterly convincing. Well, Your Honor, the only convincing part, and this is, I use the term convincing in quotes. Yes, Your Honor. Is the evidence the government produced with respect to phone calls. That was the relationship between the two people, Joey Areola and Louie Polissenman, phone calls of which nobody knew who was talking to whom and nobody knew who was saying what to whom in two checks. Can I ask you something specific? Two things. First of all, the wire fraud claim was only about the transfer of money from one account to another before any checks were written. Is that right? That's correct. What evidence, what was the government's argument about why that was wire fraud? What was wrong with that transfer? On any theory. They took all of the money and they put it from an account in one bank to an account in another bank? The chain of events was that after Mr. Polissenman got his $4.4 million settlement from the government after working for 14 years on it, the money was put in the Bank of Guam, $4.4 million, in an account with him listed as the administrator. Okay. The money, as a result of a court order procured by Attorney Bellis, who was then representing Mr. Polissenman on this probate matter, the money, $4.4 million, went over to Mr. Bellis' trust account. All right. Then Mr. Bellis put it in Mr. Areola, gave it to Mr. Areola, or transferred it to Mr. Areola. It doesn't matter to me whether I handed it to him or I transferred it, but he transferred it. Is that the wire fraud they're complaining about? No. There was one more down the road, right? No, it's down the road. It's when the Bank of Guam issued their cashier's check upon Mr. Areola's orders to send this money over to the Bank of Hawaii. In an account that was for? In an account that was set up by Mr. Areola purportedly for the estate of Rita Kaipak. All right. So what was the claim about why that was fraud? The wire fraud supposedly takes place when the Bank of Hawaii requests a verification, essentially, from the Bank of Guam that, yes, there really is $1.37 million behind this check. Which there is and was. So what's the fraud? That's the point. I don't know what the fraud is. Well, isn't the fraud the charge fraud that goes from, in effect, the trust account to the personal account, right? No, it's an account without any strings attached to it. If it goes from the trust. I mean, whether it's true or not, that's the charge, isn't it? Well, then if that's the charge, then Mr. I'm asking you, is that the charge? I don't think it is the charge because if that is the charge. What is the charge then? The charge is that there was a wire fraud between the Bank of Guam and the Bank of Hawaii. That's the only thing that Mr. Polissenman could conceivably be involved in. That's the problem. I know that. But the wire fraud, just to get the jurisdiction, the fraud itself doesn't have to be precisely only tied with the wire. It has to be associated with that transaction. Right. And I'm asking you, the government's theory is not limited to that. Is it as to what the fraud is? I don't believe that the government is asserting that the wire fraud took place between Tim Bellis' trust account and the Bank of Guam because if that were the case, then Mr. Bellis would be here too. No, but the Bank of Hawaii account is not a trust account, right? It's not an estate's account. It's not an administrator's account. Isn't that just a plain old personal account? The Bank of Hawaii account that Mr. Bellis had was presumably his client trust account. That's what he had on his check. But that's not what – it didn't go into his client trust account, did it? It went into some other separate account. The chain of events from the $4.4 million, that went from the Bank of Guam that Mr. Polissenman set up to Mr. Bellis' trust account. Then Mr. Bellis cut it in three pieces and sent one over to the Bank of Guam, an account he set up. He didn't give it to Mr. Areola. He set up this account in the Bank of Guam. Then Mr. Areola came in as the new lawyer for Mr. Polissenman. He transfers that money from the Bank of Guam account, $1.37 million, over to the Bank of Hawaii. And the focus of the evidence brought by the government was the transfer between those two banks at that stage, and that's where they brought out their exhibits to have somebody testify. But the Bank of Hawaii account was in whose name and what capacity? Which account now are we at? The last account. The Bank of Hawaii account. The last account was set up by Mr. Areola. The name of the account was the estate of Rita Kaipak. It's a separate account, right? It's not his trust account. No, it's not Mr. Areola's trust account. And it's not the account of the estate. It's like an attorney transferring money from his trust account to his personal account. Well, that's kind of what it amounted to, because Mr. Areola and Mr. Bellis were in control of this entire transaction, which they had no authority to control. And they were, you know, we'll say aided and abetted by Mr. Polissenman. I mean, isn't that the government's duty? Obviously, we have an argument there, because Mr. Polissenman with his fifth-grade education didn't quite have the ability to aid and abet anybody. Well, he had the ability to, you know, give the authorization, you know. But he didn't. He didn't. He didn't, though. That's the point. Can I ask another? This is my second question, which is somewhat further back. Did the government have an honest services theory that it forwarded it all? You know, I tried to find the closing arguments, and you haven't transcribed them, which I don't understand why. But I couldn't tell, consequently, and I don't even know how we can even decide this question as to between the honest services and the other unless we know, did the government really, was it pushing an honest services theory, and what was it? I don't recall that there was a distinct honest services. Basically, the evidence was pushed out, and the jury instructions covered honest services, and that's it. Now, to focus in on the testimony that may have been related to the honest services, we're talking about Mr. Polissman's duties and obligations as the administrator of this Rita Kaipat Trust. And because he failed in these duties, according to the government, by taking money, that there was a breach of those honest services to the estate of Rita Kaipat. If he failed by taking money, then the taking of the money was itself a separate fraud of a more traditional kind. Yeah, if he stole money, yeah. If he stole money, that's fraud. Was there a separate theory that didn't depend on him taking the money? Not that I can see that there was a separate theory. As I say, the evidence that the government put in presumably covered the honest services theory, and the focus of their theory was the breach of Mr. Polissman's duties to the estate because he didn't breach duties to anybody else. Okay, your time has run. Let's hear from the government, and we'll give you a minute to respond. Circuit Judges Tashima, Fletcher, and Berzon, aloha again, and good afternoon almost. For the record, my name is Kirk Schuler, representing the government. The most important document in this case wasn't introduced by the government, not the defense, not even admitted by the district court. The most important document was, as you've discovered, this verdict form that was signed by the jury. It's on page 21 of the defendant's... What do we do with the and-or argument? Plain reading, as... The plain reading is they decided, potentially, either fraud on the estate or honest services fraud. And they decided both, your honors? Nope. Not necessarily they decided one or the other. That's what and-or means to me. So what do you do if that's permissible reading? What they did is either honest services or estate fraud. Well, your honor, that and-or is dependent upon the answer, the checkmark. If the jury checks... I don't think you take my point. As I... In the exchange earlier, as I understand sort of the signifier of and-slash-or, that means either and or or. And if it means or, which is one of the choices then, one way to read this verdict form is the jury has found on a theory of fraud against the estate or on a theory of honest services fraud. And if that's how I read it, then what? It's still dependent upon the checkmark. No. If I... Just take my hypothetical, and you don't have to concede it, or take my reading of this. The jury has said, as I read this now, that the theory on which they're convicting under count two is either on a theory of fraud on the estate or on a theory of honest services fraud. If that's how I read it, then what? Well, you... I guess, assuming and not conceding that part, Your Honor, I think there would be confusion there. But that's absolutely impossible to read it that way. All right, so let's assume that, then what? What was... Did the government have an honest services theory that was separate that didn't depend on people taking money, on this guy taking money? No, Your Honor. But the honest services theory does not have to depend on no money. Your honest services fraud theory, and what the Supreme Court acknowledges in Skilling, is that it can still be inherently involving money. There just has to be bribes and kickbacks. I mean, honest services theory is... You don't have a bribe or kickback theory. Yes, we do, Your Honor. Mr. Areola, the co-defendant, the lawyer, the second lawyer, he was receiving money from Mr. Polissenin's estate. I mean, under Skilling, it's the defendant who has to get the bribe or kickback. Right? That's the only fair reading of Skilling. I mean, the bribe or kickback can't go to somebody else. It must go to a third party, Your Honor. Yeah, it's got to go to a third party. No, I mean somebody other than the people performing the fraud. Well, it can be together. I mean, in this case, it's Mr. Polissenin, the administrator, that is giving the kickback to a co-defendant, and that's permissible. But they're on the same side. Well, that's inherent with kickbacks, Your Honor. No, because usually, like, say, you know, a vendor gives it to the supplier, right? Or somebody on the other side. It's like if I were to give a kickback to Judge Fletcher. It doesn't make any sense. That's not a kickback. We're just splitting the proceeds. Not exactly, Your Honor, because in this case... Well, that's the same thing with Mr. Areola and Mr. Polissenin. No, because Mr. Areola was not to receive any money whatsoever from the estate. Well, neither was Mr. Polissenin supposed to take this money out, you know, the excess that he got, right? Mr. Polissenin was entitled, actually, to some portion of it as an heir to the estate. But that's not what you're charging. The money part of the fraud is what he took from the other heirs, right? Exactly, Your Honor. They misappropriated over $600,000 in this. Exactly. And ultimately, this case is all about money or property. You say they, it's Mr. Areola and Mr. Polissenin together. Yes, Your Honor. One can give the other a kickback. Well, and ultimately, this court does not have to decide whether it's a kickback or within the honest services fraud theory, because, Judge Fletcher, even if you read the verdict form like you suggested, which I think is entirely unreasonable, but if it is read that way, there is still the argument that it's harmless. This is what you addressed with Mr. Areola. I was waiting for you to say that. And so, Your Honor, this case, I mean, the whole government supplemental experts record is check after check after check, $600,000 misappropriated in this estate. This is all about money or property. Well, that would explain the conspiracy to, well, conspiracy to commit wire fraud. The only wire fraud is this. The only wire fraud, am I right, is this check. I mean, is this one big check that went. And so, why is it, Judge Tsushima was somewhat helpful. Why is this wire fraud? What's the fraud? Judge Tsushima is stating the law exactly correctly. The wire fraud is part of the jurisdictional element as part of the wire fraud. But this scheme to defraud does not have to be, it has to be related to the wire, but it doesn't have to be the sole wire. That doesn't have to be the fraud. In this case, it was a transfer from a TCD account, a time certificate deposit account that kept that money safe and secure, and they transferred it into a checking account at the Bank of Hawaii, and that required a wire. After that wire occurred and it was transferred into the Bank of Hawaii, checks started coming. How soon? Within months, Your Honor. Within months, not right away? It could have been within a month. I'd have to refer, but it was immediate. Your argument is that that's what set up the possibility of all the fraudulent withdrawals. That was part of the scheme, essentially. Yeah. Firing his old attorney that was playing by the rules, hiring a new attorney, transferring the money into a checking account, and then misappropriating $600,000. What do you make of the argument that this man had a fifth-grade education and he couldn't have been in on this scheme. It just kind of happened. Well, Your Honor, this is the same man that got $4.4 million. But that's when he had this good lawyer working for him. No, Your Honor. The testimony at trial actually stated, and I cross-examined him on this, is that his attorney, Mr. Bellis, originally, he was telling Mr. Polissman, you know what, they've offered $160,000, I believe it was, to sell this land claim. And Mr. Polissman was like, no, I don't want it. I deserve more. He went up to the legislature and lobbied day after day was his testimony. He's the one that got $4.4 million in there. And that's why there's motive in this case, too, because he didn't think the heirs that were getting the money, according to the probate court's orders, deserved that money. He thought he deserved it all. And that's why he was stealing the money from the estate, and that's why he hired an attorney that would allow him to do it. Well, besides, this is a jury question, right? And the jury found in our favor, Your Honor. And you can be clear, because this verdict form, the and or, Your Honor, what I'm getting to is that the check marks depend, are dependent upon the answers. If they only check once, then the or is controlling. If they check both, then the and controls. Well, that's the way you read it, but that's not the way I read it. And if you're ever going to reuse this form of verdict, again, I suggest you write it. Yeah, it really needs work. Well, Your Honor, I apologize. That's the reason. That may be the way you meant it, but that's not the way I read it. Well, and in this case, too, Your Honor, the defense did not object to this verdict form. There was no objection whatsoever on the record. Well, I don't object to it either because it has this nice little ambiguity in it. Well, Your Honor, I would take Judge DeSima's stance that I don't believe it's ambiguous. But even if it is, there's this harmlessness argument, Your Honor. This case was. Well, is the harmless error doctrine applied to this kind of, I'll say, a verdict problem? Like, for instance, if you get a verdict, say it didn't say, you know, and or. In fact, suppose the jury just, you know, checked on the services, right? Could you still make it harmless error arguments as well? That error is harmless because it was overwhelming evidence to support, you know, I'll say regular fraud. Yes, Your Honor. The case that I believe would support that and the progeny of it is Nader, N-E-D-E-R. That's the case law that I would rely on to support this harmless. Well, that can't be. If they were given a choice of finding it on that theory and they didn't, you could then say, but they would have even though they didn't? Well, again, Your Honor, if the honest services fraud theory is, if money and property, the scheme to fraud money and property is inherent in that honest services fraud, which the case law allows it to be, an honest services fraud doesn't have to be just dependent. I repeat that I don't have the closing argument, which I don't understand why I don't. But, so I really can't tell particularly what argument was being made on honest services fraud. What argument was being made on honest services fraud? It was the kickbacks to Mr. Areola. He received over $200,000 from the estates. And that's what you got up and argued to the jury? Yes, Your Honor. Now, the defense is correct. I never used the word kickback. How is that kickback? He's giving it back to himself. No, no, no. Mr. Policeman is giving it to Mr. Areola.  They're working hand in glove. They're both criminals, Your Honor. They're both defendants, but they're both getting different pools of money, and one's helping the other. It's a mutual relationship. It's like, you know, it would be like Jeffrey Skilling giving a kickback to Kenway, right? If they're both furthering their own purposes, Your Honor. They're together on the same team. I believe that's inherent with a kickback or a bribe, Your Honor. A kickback or a bribe is usually you're trying to get someone else to do something in your favor by giving them money that they're not entitled to, right? Yes, Your Honor. Okay. Is there any sense in which that's what was going on here? Well, the only thing the government relied on was this money that was going to Mr. Areola. Now, if the court's not inclined to find that's an honest service fraud, it doesn't have to anyway. I'm not encouraging the court to even get into the honest services of whether or not this was a valid honest service fraud theory because, I mean, this is, you know. But for present purposes, what you're saying is the honest services theory was essentially the same theory. It wasn't that you were arguing to the jury that they could have found him guilty simply for breaching the fiduciary duty to the heirs by, like, hiring a lousy lawyer or something like that. No, Your Honor. It was still dependent on the same transactions and the same money.  As I understand your honest services theory, it was essentially they were defrauding the estate. They were not performing properly. He was not performing properly as an administrator. Yeah, and that's clearly a money and property theory, too, Your Honor. Right. But on that theory of honest services, there's no kickback or bribe. They're just splitting the loot or keeping their own what they wrote to themselves. Right. And keeping it away from the heirs. I suppose you're probably pretty sorry you allege the honest services fraud at this point. Well, that's exactly right, Your Honor. It's like, you know, we didn't even need to be here if it didn't appear in the jury instructions. You know, we attempted to make this easier for everybody by having that jury instruction, but, you know, it is the irony. But you didn't have to have the indictment on that theory at all. You didn't need it for anything. No, Your Honor. What did it add? Anything? It added a possibility of an argument to the jury, but you're right. But the argument's not a different argument. It's the same argument. Mm-hmm. I.e., they took the money out. It didn't really matter whether he was giving money to Arione or he was giving money to himself. Either he was or he wasn't, but... At this time, Your Honor, this is when skilling was not decided yet, too. This was a time where this area of law was very... And everybody was alleging honest services fraud whether they needed it or not. Yeah, yeah. So, very difficult... It also supports your argument of harmless error, doesn't it? Yeah. You know, I think the Black case probably takes care of you. That is to say, a general verdict where both theories have been argued, but it was a general verdict rather than specific. And the court says, well, both theories were argued. We can't tell which one they relied on. There's overwhelming evidence in support of the theory of which conviction would be valid. End of story. They're okay. I agree with that, Your Honor. I also agree with the theory under Black and Yates. This is a United States Supreme Court that, in my opinion, the verdict form indicates that the jury picked a valid theory by checking that first one. I beg you to reconsider in light of what I've said to you because there is a possibility of reading it my way. And you wish to avoid ambiguity in your jury forms. That will certainly happen in the future, Your Honor. Your Honors, I'm asking you to affirm the defense convictions. I'll rely on my briefs for the other points. Thank you. Thank you. Response? We'll give you a minute. With respect to the harmless error concept, I'm a little concerned about that. I think, though, that the government has the burden to establish that there was a lack of harmless error under Rule 52A, and I don't believe they've been able to do that before this panel this afternoon, this morning. On what theory could the jury have found your client guilty without finding the elements of a money or property fraud? I don't think they could have found them guilty because the government did not have overwhelming evidence. They only had circumstantial evidence of, one, phone calls, two, checks. We don't know where the money went from the checks. We don't know who was on the phone calls. That's it as far as the connection on the conspiracy. And they have to have a conspiracy because Joey Areola, getting the money from Tim Bellis, who testified falsely, and Joey Areola, the lawyer, took the money and made the entire transaction. And Louie Polisman didn't even know about it. He thought he had $4 million in the bank, and he didn't. Okay. Thank you, Your Honors. Thank you both sides for your arguments. Thank you for coming all this way to argue. Actually, this is a tricky case. Okay. Case of United States, Mr. Polisman, submitted. We are now in adjournment. Thank you very much. All rise. Marshal, we'll go now. This Court in this session is here to adjourn.
judges: Tashima, Fletcher W. , Berzon